UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

                                      Case Number 09-20006-07-BC
                                      Honorable Thomas L. Ludington

ADAM CADENA,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE AND GRANTING IN PART DEFENDANT'S MOTION FOR DETERMINATION OF CAREER OFFENDER STATUS

Defendant Adam Cadena was charged in a January 14, 2009 indictment [Dkt. # 12] with one count of conspiracy to distribute more than five kilograms of cocaine, 21 U.S.C. §§ 846 & 841(a)(1), four counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and one count of forfeiture, 18 U.S.C. § 924(g); 21 U.S.C. § 853. The indictment also charged nine other defendants with various crimes associated with an alleged drug distribution ring led by Richard Wildfong that operated in Saginaw, Michigan.

On September 15, 2009 Defendant filed a motion in limine [Dkt. # 93], challenging the admission of recorded telephone conversations between a person the government alleges to be Defendant and a now-deceased confidential informant ("CI"). The motion contends that admission of the CI's recorded statements would violate his constitutional right to confront the witnesses against him. U.S. Const. amend. VI. On October 14, 2009 Defendant filed a second motion, requesting a judicial determination of whether he is a career offender under the United States Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.2. Pursuant to E.D. Mich. L.R. 7.1(e)(2), the hearing scheduled for November 17, 2009 was cancelled, and both motions will be decided on the

papers.

I

Defendant's motion in limine contends that "he had nothing to do with the Richard Wildfong cocaine conspiracy" and seeks to exclude evidence of recorded telephone conversations between a person the government will allege to be defendant[1] and a now-deceased CI. Mot. in Limine at 4; [Dkt. # 93]. He argues that he has a Sixth Amendment right to present a defense,[2] including to confront and cross examine the witnesses against him, and that under *Chambers v. Mississippi*, 410 U.S. 284 (1973), "sometimes state rules of evidence must bend to enable a Defendant to present that defense." The government's response [Dkt. # 130] contends that *Chambers* is factually distinguishable from the instant case, and even if it were not, the Supreme Court has subsequently held in *Crawford v. Washington*, 541 U.S. 36 (2004), that the Sixth Amendment makes the out-of-court statements of an unavailable witnesses inadmissible in the government's case in chief only if those statements were testimonial. The government contends that the CI's statements on the recording are not testimonial.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend VI. In *Crawford*, the Supreme Court held that the right of confrontation applies not just to in-court testimony, but also to out-of-court statements that are "testimonial" in nature. *Crawford*, 541 U.S.

---

[1] The Court will assume for the purposes of the motion in limine that the government will be able to prove that Defendant participated in the telephone conversations, and appropriately authenticate his voice on the recordings.

[2] Defendant has not raised a hearsay or foundational objection to the admission of the recorded conversations.

at 50–51.  Consequently, out-of-court statements that are "testimonial" are inadmissible unless the witness is "unavailable" and the defendant had a prior opportunity to cross examine the witness.

Here, the CI's statements during the recorded conversations occurred outside the courtroom and the CI is "unavailable," but Defendant has not had an opportunity to cross examine the CI. Therefore, the CI's statements during the recorded telephone conversations are inadmissible if they are "testimonial." If they are not "testimonial," the confrontation clause is not a barrier to their admission.

The Supreme Court has declined to precisely define the term "testimonial," but the Court has provided some guidance that the circuit courts have elaborated on. "Testimonial" statements include in-court testimony and "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Id.* at 51–52 (quoting *White v. Illinois*, 502 U.S. 346, 365 (1992) (Thomas, J., concurring)). In the Sixth Circuit, the term has been more broadly construed to turn on the declarant's intent. A statement is testimonial if "the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). "Considered within such a framework, statements of a confidential informant are testimonial." *Id.* However, that rule is limited to those statements of a CI that are offered to prove the truth of the matter asserted. *Id.*

Here, the conversation between defendant and the CI did not produce statements that were formal or under oath; the statements were not given to a police officer as part of a custodial interrogation; and the statements were not part of a hearing or earlier trial. But the statements were

made by a CI with the clear understanding that they would be used "against the accused in investigating and prosecuting the crime." *Id.* Under a literal reading of *Cromer*, then, the CI's statements would seem to be testimonial and barred by the confrontation clause even though in *Cromer* the CI's statements were given directly to a police officer who later testified at trial. In this case, the statements were not given directly to a police officer, but they were captured in a recorded telephone conversation between the CI and Defendant in circumstances under which a reasonable person in the CI's position would know that investigators would listen to the recording and use his recorded statements against the Defendant at a later trial.

However, whether the CI's statements are barred also depends on the purpose for which they are offered. *United States v. Jones*, 205 Fed. App'x 327, 340 (6th Cir. Oct. 11, 2006). The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). Defendant asserts that the recording of his conversation with the CI will be offered to prove his connection to the "Wildfong cocaine conspiracy." The recordings may be admissible for that purpose, or to " 'give meaning to the admissible responses of' " Defendant or establish a connection between Defendant and the CI. *Jones*, 205 Fed. App'x at 342 (quoting *United States v. Sexton*, 119 Fed. App'x 735, 741–43 (6th Cir. 2005)). But they are not admissible if the government offers the CI's statements to prove the truth of the matter asserted.

Consequently, Defendant's motion in limine will be granted to the extent the government intends to offer the CI's recorded statements to prove the truth of the matter asserted. The motion will be denied to the extent the government intends to offer the CI's recorded statements to give context to Defendant's own statements in the recordings or establish a connection between

Defendant and the CI. The government will be directed to provide a recording and transcript of the CI's statements it anticipates using during trial to Defendant and the Court withing thirty days. The Government should also provide a written explanation of the statements' relevance along with the transcript.

## II

Defendant has also moved for a determination of whether he is a "career offender" pursuant to U.S.S.G. § 4B1.1. [Dkt. # 132]. The question is relevant to sentencing, but not to the determination of whether or not he is guilty of the charged offenses. Sentencing, of course, will not take place unless defendant pleads guilty and waives his right to a jury trial, or is convicted of one or more of the charges following trial. Nevertheless, the government indicated in its response to Defendant's motion [Dkt. # 135], and confirmed at a status conference held on November 17, 2009, that it does not oppose the Court making the determination at this time. Moreover, because the determination of whether Defendant qualifies as a career offender would have a significant impact on his ultimate sentence if he were to be convicted or plead guilty, and because the state of the law leaves him without clear guidance, the Court will endeavor to furnish a decision. The Court will undertake the analysis with the understanding that Defendant retains his presumption of innocence and he has not waived any right to which he is entitled.

U.S.S.G. § 4B1.1(a) provides that "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The only issue in dispute is whether a conviction for

discharging a firearm at a dwelling or occupied structure related to a 1995 incident in Bay City, Michigan in violation of Mich. Comp. Laws § 750.234b[3] is a "crime of violence." If, as Defendant contends, the conviction is not for a "crime of violence," he will likely face a substantially shorter sentence if convicted of the offenses charged in this case.

A "crime of violence" is "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that – (1) has as an element the use, attempted use, or threatened use

---

[3] It is not clear from the record whether the conviction was based on a violation of subsection one or subsection two. The statute provides in full:

> Sec. 234b. (1) Except as provided in subsection (3) or (4), an individual who intentionally discharges a firearm at a facility that he or she knows or has reason to believe is a dwelling or an occupied structure is guilty of a felony, punishable by imprisonment for not more than 4 years, or a fine of not more than $2,000.00, or both.
>
> (2) An individual who intentionally discharges a firearm in a facility that he or she knows or has reason to believe is an occupied structure in reckless disregard for the safety of any individual is guilty of a felony, punishable by imprisonment for not more than 4 years, or a fine of not more than $2,000.00, or both.
>
> (3) Subsections (1) and (2) do not apply to a peace officer of this state or another state, or of a local unit of government of this state or another state, or of the United States, performing his or her duties as a peace officer.
>
> (4) Subsections (1) and (2) do not apply to an individual who discharges a firearm in self-defense or the defense of another individual.
>
> (5) As used in this section:
>
> (a) "Dwelling" means a facility habitually used by 1 or more individuals as a place of abode, whether or not an individual is present in the facility.
>
> (b) "Occupied structure" means a facility in which 1 or more individuals are present.
>
> (c) "Peace officer" means that term as defined in section 215.

Mich. Comp. Laws. § 750.234b.

of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). The parties focus on the "otherwise clause," that is, whether the conviction for discharge of a firearm at a dwelling "otherwise involves conduct that presents a serious potential risk of physical injury to another." The Sixth Circuit applies a two-part test to the determination of whether a conviction fits within the otherwise clause. First, "does the crime present a serious potential risk of [physical injury] akin to the listed crimes?" *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009) (citing *James v. United States*, 550 U.S. 192 (2007)). Second, "does the crime involve the same kind of 'purposeful, violent, aggressive conduct' as the listed crimes?" *Ford*, 560 F.3d at 421 (quoting *Begay v. United States*, 128 S. Ct. 1581, 1586 (2008)). A categorical approach is applied to the determination, meaning a court should "look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime." *Id.* at 422 (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). Only if "it is possible to violate a criminal law in a way that amounts to a crime of violence and in a way that does not" may the Court consider the facts underlying the conviction. *Ford*, 560 F.3d at 422 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

### A

Defendant asserts that the Court should look beyond the mere fact of his conviction to the circumstances underlying the charges because it is "possible" to violate the law in a nonviolent way. *Ford*, 560 F.3d at 422. More specifically, that it is possible to discharge a firearm at or in a qualified facility without creating a serious risk of physical injury. *Chambers v. United States*, 129 S. Ct. 687 (2009). The argument is unpersuasive. Unlike a conviction for escape, which was at issue in

*Chambers* and *Ford*, a conviction for discharge of a firearm "at" or "in" a dwelling requires proof that the defendant intentionally discharged a firearm at or from within a "facility" he "kn[e]w[] or ha[d] reason to believe" was then occupied by a person or was "habitually used" by at least one person "as a place of abode." Mich. Comp. Laws § 750.234(b). It may be possible to "walk away" from a minimum security prison, halfway house, or custodial medical facility without committing a crime of violence, *Ford*, 560 F.3d 420, but it is less probable that the intentional discharge of a firearm at or from within a building that is known to be occupied, or at least "habitually" used as an abode, would not create "a serious potential risk of physical injury" similar to the listed crimes. *James*, 550 U.S. at 209.

It may be possible to construct a scenario where a person could violate the statute without actually endangering another person—perhaps a celebratory gunshot fired into the air to bring in the new year or target practice directed toward a "facility" located in a remote forest that a person "habitually" uses as an abode, but that the person firing the shot knows to be empty at the time. However, the categorical approach does not require "that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *Id.* at 208. "[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury . . . ." *Id.*

Moreover, even if Defendant was only convicted on an "aiding and abetting theory," as he contends in his motion, the term "crime of violence" includes convictions for "the offense of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.1, Appl. n.1.

-8-

The mere fact that Defendant did not pull the trigger does not mean the conviction is not a crime of violence.

**B**

Moving to the second *Ford* inquiry, Defendant contends that the conviction is not a "crime of violence" because it is "not similar in kind to the numerated offenses in the guideline . . . ." *See Begay v. United States*, 128 S. Ct. 1581 (2008).[4] In *Begay*, the Supreme Court held that the specific examples in clause two of the guideline—burglary of a dwelling, arson, extortion, and crimes involving explosives—limit the scope of the otherwise clause. *Id.* at 1584–86. The Court explained that the examples in clause two show Congress's intent to capture only "physically risky crimes against property," rather than all crimes that present a serious risk of physical injury. *Id.* at 1586 (citing H.R. Rep. No. 99-849, p. 3 (1986)). Furthermore, all of the listed crimes require proof of "purposeful, violent, and aggressive" conduct before a defendant may be convicted. *Begay*, 128 S. Ct. At 1586. Consequently, drunk driving is not covered by the otherwise clause because, unlike arson, burglary, and extortion, it is not a physically risky property crime, nor does it necessarily involve "purposeful, violent, or aggressive" conduct. *Id.*

Initially, Defendant's second argument also seems unpersuasive. Unlike drunk driving, "[i]ntentional discharge of a firearm at dwelling or occupied structure," *is* a "physically risky crime against property." *Begay*, 128 S. Ct. at 1586. Like burglary, it creates the potential for a "violent" conflict when a perpetrator approaches a "dwelling" or "occupied structure" and purposefully and aggressively discharges a firearm at it. *Id.* Like arson, even if no one is present at the "dwelling"

---

[4]*Begay* involves the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), not the sentencing guidelines, but still applies to this question with equal force because "both laws share essentially the same definitions (if not the same titles)." *Ford*, 560 F.3d at 421.

-9-

at the time, the potential for physical injury remains high. Bullets, much like fire, do not just stop when they reach their targets, nor for that matter do they always meet their targets. Any time a weapon is fired at a dwelling it creates the potential for a significant injury or death to a neighbor or person simply passing by. *See United States v. Weinert*, 1 F.3d 889, 891 (9th Cir. 1993) (holding that conviction pursuant to Cal. Penal Code § 246 for "maliciously and willfully discharg[ing] a firearm at an inhabited dwelling" is a crime of violence even though the statute did not require that the dwelling be occupied at the time of the incident and the defendant claimed he knew it to be unoccupied); *United States v. Ruvalcaba*, No. 5:08CR379, 2009 WL 1707911 (N.D. Ohio June 18, 2009) (holding that a violation of Ohio Rev. Code Ann. § 2923.161 for discharging a firearm "at or into an occupied structure" is a crime of violence even though the statute did not require that a person actually be in or at the "occupied structure" at the time of the incident); *see also United States v. Rice*, 520 F.3d 811, 820 (7th Cir. 2008) (conviction pursuant to 720 Ill. Comp. Stat. 5/24-1.2(a)(2) for discharging "a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person" is a crime of violence). *But see United States v. Gear*, 577 F.3d 810, 812 (7th Cir. 2009) (conviction for reckless discharge of a firearm pursuant to 720 Ill. Comp. Stat. 5/24-1.5(a) is not a "crime of violence" because it does not require intentional conduct for a conviction).

Moreover, discharge of a firearm at a dwelling, like arson, burglary, extortion, and crimes involving the use of explosives usually involves "purposeful, violent, and aggressive conduct." *Begay*, 128 S. Ct. at 1586 (internal quotations and citation omitted). Discharge of a firearm at a building requires *intent* to discharge the weapon at a building the perpetrator knows is occupied, or at least habitually used as a place of abode. *See People v. Henry*, 607 N.W.2d 767 (Mich. App. Ct.

-10-

1999) (holding that the discharge of a firearm at a dwelling is a general intent crime). Discharge of a firearm at a dwelling is not a strict liability or status crime. Statutes criminalizing drunk driving, on the other hand, "typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." *Begay*, 128 S. Ct. at 1586–87; *see also* U.S.S.G. § 4B1.1.

The initial analysis, as well as common sense, suggest that discharge of a firearm "at" or "in" a dwelling or occupied structure is a crime of violence because it typically creates the risk of a serious physical injury, and usually involves the same type of purposeful, violent, and aggressive conduct involved in arson, burglary, crimes involving explosives, and some types of extortion. But recent decisions from the Supreme Court and the Sixth Circuit indicate a trend toward a more limited definition of the phrase "crime of violence." At least as to the second *Ford* inquiry, the similarity between the crime at issue and the enumerated crimes, the appellate courts have emphasized the type of searching inquiry that the Supreme Court appeared to caution against when making the first inquiry, whether the crime creates a risk of physical injury.

That is, recent decisions suggest district courts should parse the offense and even invent hypothetical scenarios to ensure that "every conceivable factual offense covered by a statute must necessarily" involve purposeful, violent, and aggressive conduct. *Cf. James*, 550 U.S. at 208. If there is any conceivable way that a conviction could have resulted from conduct that is not purposeful, violent, and aggressive, then the conviction is not a crime of violence pursuant to U.S.S.G. § 4B1.1. *See Chambers v. United States*, 129 S. Ct. 687 (2009) (parsing the elements of failure to report pursuant to 720 Ill. Comp. Stat. 5/31-6(a) and determining that it punished several

classes of conduct, including conduct that did not involve use of physical violence such that it could not be classified as a crime of violence); *Ford*, 560 F.3d at 422 (parsing the elements of escape pursuant to Ky. Rev. Stat. § 520.010 and determining it was not a crime of violence because, among other reasons, not all offenses punished by the statute were purposeful, violent, or aggressive).

The statute at issue in this case, Mich. Comp. Laws § 750.234b, prohibits two distinct classes of conduct. First, discharging a firearm "at a facility" that a person "knows or has reason to believe is a dwelling or an occupied structure." Second, discharging a firearm "in a facility" that the person "knows or has reason to believe is an occupied structure in reckless disregard for the safety of any individual." The statute defines dwelling as "a facility habitually used by [one] or more individuals as a place of abode, whether or not an individual is present at the facility." An occupied structure is "a facility in which [one] or more individuals are present." Defendant's brief suggests he was convicted for discharging a firearm "in" a qualified facility [Dkt. # 132]; the government's brief suggests the firearm was discharged "at" a qualified facility [Dkt. # 135]. Both types of conduct will be analyzed in turn.

The first section of the statute prohibits discharging a weapon "at" a qualified facility. Mich. Comp. Laws § 750.234b(1). "At" is given is ordinary meaning; " '[t]o or in the direction of' " or " 'in, on, or near.' " *People v. Wilson*, 585 N.W.2d 24, 26 (Mich App. Ct. 1998) (quoting *The American Heritage Dictionary* 137 (1982); *Random House College Dictionary* 83 (1997)). Consequently, the bullet need not even contact the facility, or be aimed directly at the facility to secure a conviction. *Wilson*, 585 N.W.2d at 26. All the government must prove is that the person charged "was shooting toward or in the direction of" a qualified facility. *Id.* Proof that a defendant intentionally discharged a firearm in the direction of a qualified facility, even if the defendant

intentionally aimed above the facility, the bullet did not contact the facility, and the defendant knew the facility was empty at the time, constitutes sufficient evidence for a conviction pursuant to the statute. *Id.* Moreover, the statute defines a general intent crime, not a specific intent crime. *People v. Henry*, 607 N.W.2d 767 (Mich. App. Ct. 1999). To obtain a conviction the government only needs to demonstrate that the defendant intended to do the prohibited act, discharge a firearm in the direction of a qualified facility, not that the defendant intended a specific result. *Id.* at 769.

Considering the elements as interpreted by the Michigan courts, conviction pursuant to § 750.234b(1) requires (1) intent to discharge a weapon (2) toward or in the direction of (3) a facility habitually used as a place of abode, even if no one is present at the time, or any facility where a person is actually present at the time. It does not require purposeful aggression or purposeful violence. *Begay*, 128 S. Ct. 1581. A defendant merely standing in her yard on New Year's Eve and intentionally discharging a celebratory gunshot in the general direction of her home, which she knows to be empty, would violate the statute. Such a defendant, like a drunk driver or prison escapee, acted recklessly and placed people around her at risk of physical injury, but she did not display the type of purposeful violence or aggression that the Supreme Court and the Sixth Circuit require. *Id.*; *Ford*, 560 F.3d at 425.

The second class of conduct prohibited by the statute is discharge of a firearm "in" a qualified facility. Mich. Comp. Laws § 750.234b(2). The Michigan appellate courts have not specifically defined "in," but it too will be given its normal meaning. When used as a preposition, "in" "indicate[s] inclusion within space, a place, or limits." *Random House College Dictionary* 670 (1982). "In," in the context of section two, means "within" or "inside" a qualified facility. In *Henry*, the Michigan Court of Appeals assumed "in" had such a meaning, and upheld the

-13-

defendant's conviction for recklessly discharging a firearm within his own home. *Henry*, 670 N.W.2d 767. In addition to prohibiting discharge of a firearm "in" a qualified facility rather than "at" a qualified facility, section two also differs from section one in that it requires a person to be in the facility at the time; habitual use of the facility as an abode is not enough. Finally, section two adds a fourth element to the crime; the discharge must have been made in reckless disregard for the safety of an individual.

Still, section two, like section one, will not always require purposeful violence or purposeful aggression to achieve a conviction. Take, for example, a hypothetical defendant who uses his basement as a target range, but recklessly fails to provide a proper backstop and ensure that the bullets do not leave the basement. When the hypothetical defendant takes aim and fires, he intentionally discharges a firearm, in a facility where a person (the defendant) is located, with reckless disregard for the safety of an individual (perhaps the defendant again). Arguably, however, he has not acted violently or aggressively.

Violations of § 750.234b will usually involve purposeful, violent, and aggressive conduct, but not always. As a result, the Court is not prepared to decide, after applying the categorical approach, that Defendant Cadena is a career offender, at least if it is required to decide that his § 750.234b conviction is a crime of violence. Although the circumstances pose an extremely close question, "if any doubt remains about this conclusion, the rule of lenity alleviates it. When ambiguity clouds the meaning of a criminal statute, 'the tie must go to the defendant.' " *Ford*, 560 F.3d at 425 (quoting *United States v. Santos*, 128 S. Ct. 2020, 2025 (2008) (plurality)). Too much doubt remains about whether Cadena's conviction necessarily involved purposeful, violent, and aggressive conduct to hold as a matter of law that he committed a crime of violence. *Begay*, 128 S.

Ct. 1581.

### III

The Court's conclusion that the statute is ambiguous such that it prohibits several categories of conduct, some of which would qualify as a crimes of violence pursuant to § 4B1.2 and some of which would not, does not end the inquiry. In such cases, and "where a defendant has pleaded guilty, [the Court] may also consider 'the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.' " *United States v. Baker*, 559 F.3d 443, 452 (6th Cir. 2009) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)). The Court may take a critical look at the actual facts that led to Defendant's conviction, rather than rely on the elements of the statute alone. The Court may not consider police reports or other records that are not part of the specific factual findings made by the judge and accepted by Defendant. *Id.* at 21–23. The government, which would bear the burden of proving by a preponderance of the evidence that the 1995 conviction is a crime of violence at sentencing, has not yet provided any specific factual evidence relating to Defendant's 1995 conviction that is appropriate for the Court to review. The government will, however, have the opportunity to present such evidence before sentencing.

Accordingly, Defendant's motion in limine [Dkt. # 93] is **GRANTED** to the extent it requests exclusion of the testimonial statements of the now-deceased CI that are offered to prove the truth of the matter asserted. The government is **DIRECTED** to provide the Court and Defendant with a transcript of the statements it anticipates using at trial within **30 days** of the date of this opinion. The transcript should be accompanied by a written explanation or the statements' relevance.

It is further **ORDERED** that Defendant's motion for determination of his career offender [Dkt. # 132] status is **GRANTED** to the extent it asks for a judicial determination of whether or not § 750.234b describes a crime of violence. Because the statute is ambiguous, the determination depends on the specific facts of conviction.

It is further **ORDERED** that if Defendant is convicted or pleads guilty and waives his right to a jury trial, the appropriate advisory guideline range calculated pursuant to the Unites States Sentencing Guidelines Manual will depend on whether the government can show by a preponderance of the evidence that the specific events that led to Defendant's conviction for violating § 750.234b demonstrate purposeful, violent, and aggressive conduct.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: November 24, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 24, 2009.

s/Tracy A. Jacobs  
TRACY A. JACOBS